NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: October 4, 2022

S22Y1156, S22Y1176. IN THE MATTER OF KAREN LYNN PASS.

PER CURIAM.

These two disciplinary matters are before the Court on the consolidated report submitted by special master, Patrick H. Head, who recommends that this Court impose a public reprimand with conditions upon respondent Karen Lynn Pass (State Bar No. 480920) for her violations of Rules 1.15 (I) (a), 1.15 (II) (b), and 5.3 (b) of the Georgia Rules of Professional Conduct ("GRPC"), found in Bar Rule 4-102 (d), in connection with two client matters. Neither party has filed any exceptions to the report and recommendation, see Bar Rule 4-218, and we agree that a public reprimand with conditions is appropriate discipline in this case.

According to the special master, the matter underlying S22Y1156 arose from a formal complaint charging Pass with

violating a number of rules during her representation of an individual in a personal injury matter. But the special master found that clear and convincing evidence showed only that Pass had deposited funds from the settlement of her client's case into her IOLTA account at a time when that account also held funds belonging to at least one other client and that Pass admittedly kept no ledgers or other records from which she would be able to tell at any given time the actual amount of funds in her IOLTA account belonging to each client. Based on those facts, the special master concluded that Pass had violated Rules 1.15 (I) (a)[1] and 1.15 (II) (b),[2] which rules, he noted, were somewhat duplicative in that Rule 1.15

---

[1] Rule 1.15 (I) (a) provides in relevant part that "[a] lawyer shall hold funds or other property of clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own funds or other property. Funds shall be kept in one or more separate accounts maintained in an approved institution. . . . Complete records of such account funds and other property shall be kept by the lawyer."

[2] Rule 1.15 (II) (b) provides in relevant part that "[n]o personal funds shall ever be deposited in a lawyer's trust account, except that unearned attorney's fees may be so held until the same are earned. . . . Records on such trust accounts shall be so kept and maintained as to reflect at all times the exact balance held for each client or third person. No funds shall be withdrawn from such trust accounts for the personal use of the lawyer maintaining the account except earned lawyer's fees debited against the account of a specific client and recorded as such."

2

(I) (a) requires an attorney to keep complete records of the trust account in which she holds the "funds and other property" of any client or third party, and Rule 1.15 (II) (b) requires that those records be "kept and maintained as to reflect at all times the exact balance held for each client or third party."

With regard to S22Y1176, the special master noted that it arose from a separate formal complaint charging Pass with violations of a variety of the GRPC during her representation of a client in an investigation she agreed to undertake. After considering the evidence, however, the special master found that the Bar had shown, by clear and convincing evidence, only that Pass had taken money in advance from her client to be used for fees and expenses connected to an investigation she was to perform for the client; that she deposited the unearned expenses into her IOLTA account, but then failed to review, audit, or otherwise reconcile that account; that unbeknownst to Pass, her office manager—a longtime friend and nonlawyer employee—was accessing Pass's IOLTA account and obtaining funds via forged checks; and that, as a result, there were

multiple times where Pass's IOLTA account carried a balance that was less than the almost $4,000 she should have been holding in trust on her client's behalf. The special master found that Pass was unaware of her employee's illegal actions until several months after that employee abruptly left Pass's employment, absconding with a firm computer and other office equipment and materials; that after discovering the thefts, Pass was able, over time, to restore enough of the stolen funds to replace the money she was required to return to her client; and that those funds now have been returned to the client. The special master specifically noted that there was no allegation that Pass was involved in, or even contemporaneously knew of, her employee's withdrawal of the client's funds from Pass's IOLTA account. The special master concluded that Pass had violated Rule 1.15 (I) (a) and Rule 5.3 (b)[3] in that she failed to provide the proper oversight of a nonlawyer employee thereby

---

[3] Rule 5.3 (b) provides that "with respect to a nonlawyer employed or retained by or associated with a lawyer . . . a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer."

4

allowing that employee to misappropriate funds belonging to Pass's client from Pass's IOLTA account; she failed to review, audit, or reconcile her IOLTA account; and, therefore, she failed to adequately safeguard her client's property.

After finding those violations, the special master turned his attention to determining the appropriate discipline in these two cases. He noted the importance of looking only at the portions of the rules found to have been violated and of focusing not on what punishment the offense may warrant, but on what punishment is required "as a penalty to the offender, a deterrent to others, and as an indication to laymen that the courts will maintain the ethics of the profession." *In the Matter of Dowdy*, 247 Ga. 488, 493 (277 SE2d 36) (1981). He recited that this Court generally looks to the Standards for Imposing Lawyer Sanctions, American Bar Association Center for Professional Responsibility ("ABA Standards"), for guidance in determining punishment in disciplinary cases, see *In the Matter of Morse,* 266 Ga. 652, 653 (470 SE2d 232) (1996), and that those standards look to the duty violated,

5

the lawyer's mental state, the actual or potential injury caused by the lawyer's misconduct, and the existence of any aggravating and mitigating factors in assessing discipline.

The special master found that Pass's violations in both cases implicated ABA Standard 4 (violations of duties owed to clients) in that Pass's failure to properly monitor her trust account and her failure to properly supervise her nonlawyer employee both affected her ability to preserve her client's property. See ABA Standard 4.1. The special master concluded, however, that Pass was merely negligent in her dealings with the IOLTA account and her clients' funds, noting Pass's testimony that she is primarily a criminal defense attorney and, therefore, rarely has client funds in her IOLTA account. He further concluded that Pass did not have the "conscious awareness of the nature or attendant circumstances" of the actions of her nonlawyer employee, and, at worst, was merely negligent in her supervision of that employee.

With regard to injury or potential injury, the special master noted that, although the funds of the client in S22Y1176 were taken

6

from Pass's IOLTA account, Pass did not steal those funds and, once the loss was discovered, she replaced them and returned the funds to the client. And, with regard to S22Y1156, the special master noted that there was no injury to the client in that none of that client's funds were lost or misappropriated in any way. Ultimately, the special master concluded that there was no actual injury to either client, but acknowledged that the potential for injury was present.

In terms of aggravating and mitigating factors, the special master noted, in aggravation, that Pass had one instance of prior discipline, having received a formal letter of admonition in 2011 related to a failure to communicate with a client, and that she had substantial experience in the practice of law, having been admitted to the Bar in 1994. See ABA Standards 9.22 (a) and (i).  In mitigation, he somewhat discounted Pass's former discipline on the grounds that it did not involve her trust account or her failure to supervise a nonlawyer employee. See *In the Matter of Kakol*, 286 Ga. 469, 470 (689 SE2d 308) (2010) ("In mitigation of discipline . . . we find that Kakol's prior discipline did not involve [the] trust fund

7

issues [involved in this case].”). He further noted that Pass had not acted with a dishonest or selfish motive; that she made a timely and good faith effort to rectify the consequences of the actions of her nonlawyer employee; that she made full and free disclosure to the State Bar; that she has had a cooperative attitude during the proceedings; and that she has a good reputation in the legal community. See ABA Standards 9.32 (b), (d), (e), and (g). The special master further noted that, although neither aggravating nor mitigating, neither client filed a grievance against Pass.[4] See ABA Standard 9.4 (f).

Ultimately, the special master concluded that this case was most similar to *In the Matter of Brock*, 306 Ga. 388 (830 SE2d 736) (2019) (Review Board reprimand where, unbeknownst to Brock, his paralegal misappropriated $21,000 in trust account funds; Brock kept no ledger or other record showing the balance belonging to each

---

[4] Apparently, the discovery of the violations set out in S22Y1156 arose during the Bar's investigation of S22Y1176, which, in turn, arose from a grievance filed by an attorney who alleged that he had been hired by a client to conduct the same investigation Pass was hired to conduct.

client in his trust fund account; the Bar's investigation uncovered several minor instances of Brock's own misuse of his trust account; and Brock replaced all missing client funds once he learned of the theft), and *In the Matter of Grant,* 287 Ga. 131 (694 SE2d 647) (2010) (Review Panel[5] reprimand for violations of Rules 5.3 and 1.15 (I) and (II) caused by Grant's negligent failure to supervise her paralegal and to reconcile or review her IOLTA account). Therefore, the special master recommended, for Pass's negligent violation of Rules 1.15 (I) (a), 1.15 (II) (b), and 5.3 (b), that she receive a public reprimand and that she consult with the Law Practice Management Section of the Bar within 60 days after this Court's opinion and follow its recommendations concerning her law practice.

Neither side has filed exceptions contesting the special master's factual findings, legal conclusions, and recommendations for discipline. And, after review of the record, we agree with the special master's conclusions that Pass negligently violated Rules

---

[5] The Review Panel is now known as the Review Board.

9

1.15 (I) (a), 1.15 (II) (b), and 5.3 (b), and that Pass's conduct was similar to that of the respondents in *Brock* and *Grant*. Although we imposed a Review Board reprimand in *Brock* and *Grant*, the attorneys in those cases had no prior disciplinary history. See *Brock*, 306 Ga. at 389 ("[T]here are several mitigating factors in this matter, specifically, the lack of a prior discipline record."); *Grant*, 287 Ga. at 132 ("Grant offers in mitigation . . . that she has no prior disciplinary record."). Here, by contrast, Pass has previously been disciplined. Under the circumstances, we agree with the special master that a public reprimand is appropriate and sufficient to act as a penalty to Pass, a deterrent to other lawyers, and as an indication to the public that the courts will maintain the ethics of the profession. Therefore, we accept the report and recommendation of the special master and order that respondent Karen Lynn Pass receive a public reprimand in accordance with Bar Rules 4-102 (b) (3) and 4-220 (c), and that she provide certification to the Office of General Counsel within 60 days after this Court's opinion that she has consulted with the Law Practice Management Section of the Bar

and that she will follow its recommendations concerning her law practice.

*Public reprimand with conditions. All the Justices concur.*